LESTER H. and JUNE M. FINKBINDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Finkbinder v. Commissioner
Docket No. 5604-80.
United States Tax Court
T.C. Memo 1982-232; 1982 Tax Ct. Memo LEXIS 515; 43 T.C.M. (CCH) 1246; T.C.M. (RIA) 82232; April 29, 1982. *515 Lester H. and June M. Finkbinder, pro se. Chauncey W. Tuttle, Jr., for the respondent. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to the tax under section 6653(a) [1] as follows: Deficiencies
Additions to the
Year
in Tax
Tax (Section 6653(a))
1976
$ 4,782.48
$ 239.12
1977
2,183.64
109.18
The issues for decision by the Court are: (1) Whether petitioners understated their income for the taxable years 1976 and 1977; and (2) Whether their underpayments of tax for those years were due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife, and at the time they filed their petition in this case they resided in Taylor, Michigan. They timely filed their joint Federal income tax returns for the calendar *516 years 1976 and 1977, using the cash receipts and disbursements method of accounting. During the years 1976 and 1977, petitioners were engaged in business as a sole proprietorship under the name of Lester Trucking. Petitioners maintained a business checking account (No. 06-42-0817-5) during those years at the Wyandotte Savings Bank. Petitioner June Finkbinder (hereinafter Mrs. Finkbinder) maintained a personal checking account (No. 06-32-2046-3) at the same bank. Upon audit of their tax returns, petitioners produced their bank statements, conceled checks, purchase invoices(in envelopes for each month), loan accounts, and two savings passbooks reflecting small amounts of savings. Petitioners either did not maintain or did not produce for respondent or the Court any cash receipts Journal, any sales invoices, or any sales journal. The only record for gross receipts for the trucking business was certain monthly lists of gross receipts that petitioners turned over to their accountant for preparation of their tax returns, including their Schedule C's, for each year. Petitioners either did not maintain or failed to produce any original book of entry reflecting gross receipts for *517 Lester Trucking. On audit respondent determined that petitioners paid personal living expenses by checks written on their business account in the amounts of $ 16,900.18 in 1976 and $ 11,840.29 in 1977. Respondent also determined that petitioners wrote checks to "cash" on their business account in the amounts of $ 8,067.50 for 1976 and $ 13,745 in 1977. [2] Many of the checks on the business account written to "cash" were deposited in Mrs. Finkbinder's personal checking account. These business account checks for payment of personal expenses and those written to "cash" were in addition to the business expense deductions claimed on petitioners' Schedule C's. On audit respondent verified the business expenditures claimed on petitioners' Schedule C's, but could not verify gross receipts for either year. However, the bank deposits to petitioners' business bank account exceeded gross receipts reported on the Schedule C's to such an extent as to suggest understatements of gross receipts. Respondent reconstructed or recomputed petitioners' income by means of a source and applications (expenditures) method, and issued a statutory notice of deficiency based thereon. *518 The sources and applications of funds for the years 1976 and 1977, based upon the statutory notice and further evidence adduced at the trial, were as follows: CALENDAR YEAR 1976
SOURCES OF FUNDS
AMOUNT
Gross receipts as reported on Schedule C
$ 64,691.15
State income tax refund income as reported
on return
426.62
Interest income as reported on return
241.68
Cash in checking account, balance as of
01/01/76:
1,602.86
Wyandotte Savings Bank
Acct. 06-42-0817-5
$ 1,536.45
Acct. 06-32-2046-3
66.41
Cash in savings account, balance as of
01/01/76: Bank of Commonwealth
Acct. 15-042268-1
104.85
Wyandotte Savings Bank
Acct. 068-06272-8
107.37
New Loans by St. Alfred's Credit Union: Asset for which loan made
Date
AMOUNT
Automobile
05/20/76
6,150.66
Snowmobile
12/18/76
1,000.00
Improvements
10/28/76
2,500.00
Total Sources of Funds in 1976 per
notice of deficiency
$ 76,825.19
1975 Federal income tax refund
715.99
Savings in St. Alfred's Credit Union,
Acct. 2591.0 as of 01/01/76
4,962.16
Total Sources of Funds in 1976
$ 82,503.34
APPLICATIONS OF FUNDS
AMOUNT
Business expenses deducted on Schedule C,
less depreciation
$ 46,740.45 Purchases of Assets: 1976 Cadillac auto
[3] 8,600.00 Snowmobile purchased from M. Kominsky
800.00 Trash containers
3,129.32 Cash in checking account, balance as of
12/31/76:
1,145.60 Wyandotte Savings Bank
Acct. 06-42-0817-5
907.80
Acct. 06-32-2046-3
237.80
Savings account, balance as of
12/31/76:
32.22 Bank of Commonwealth
Acct. 15-042268-1
24.85
Wyandotte Savings Bank
Acct. 068-06272-8
7.37
Loan payments, less interest deducted
on Schedule C
9,590.46 Personal living expenses paid by
checks issued on Business Acct.
No. 06-42-0817-5
16,900.18 Business Acct. 06-72-0817-5
written to "Cash"
8,067.50 Total Applications of Funds in 1976
per notice of deficiency
$ 95,005.73 Purchases of Assets: Trade in of Cadillac
[3] (2,449.34)
Savings in St. Alfred's Credit Union: Acct. 2591.0 as of 12/31/76
4,177.33 Acct. 5074.0 as of 12/31/76
2,051.51 Total Applications of Funds in 1976
$ 98,785.23 *519 CALENDAR YEAR 1977
SOURCES OF FUNDS
AMOUNT
Gross receipts as reported on Schedule C
$ 95,824.03
State and local income tax refunds as
reported on return
191.94
Interest income as reported on return
[4] 289.06
Cash in checking account, balance as
of 01/01/77:
1,145.60
Wyandotte Savings Bank
Acct. 06-42-0817-5
907.80
Acct. 06-32-2046-3
237.80
Savings account, balance as of
01/01/77:
32.22
Bank of Commonwealth
Acct. 15-042268-1
24.85
Wyandotte Savings Bank
Acct. 068-06272-8
7.37
*520 New loans for St. Alfred's Credit Union: Asset for which loan made
Date
AMOUNT
Trash containers
02/11/77
8,000.00
Trash containers
03/04/77
8,000.00
Total Sources of Funds in 1977
per notice of deficiency
$ 113,482.85
Savings in St. Alfred's Credit Union: Acct. 2591.0 as of 01/01/77
4,177.33
Acct. 5074.0 as of 01/01/77
2,051.51
Total Sources of Funds in 1977
$ 119,711.69
APPLICATIONS OF FUNDS
AMOUNT
Business expenses deducted on Schedule C,
less depreciation
$ 61,911.93
Purchases of Assets: Trash containers
[5] 20,414.07
Cash in checking account, balance
as of 12/31/77:
1,365.66
Wyandotte Savings Bank
Acct. 06-42-0817-5
1,200.21
Acct. 06-32-2046-3
165.45
Savings Accounts, balance as of
12/31/77:
32.22
Bank of Commonwealth
Acct. 15-042268-1
24.85
Wyandotte Savings Bank
Acct. 068-06272-8
7.37
Loan payments, less interest deducted
on Schedule C
11,089.16
Personal living expenses paid by
checks issued on Business Acct.
06-42-0817-5
11,840.29
Business Acct. 06-42-0817-5 checks
written to "Cash"
13,745.00
Total Applications of Funds in 1977
per notice of deficiency
$ 120,398.33
Savings in St. Alfred's Credit Union: Acct. 5074.0 as of 12/31/77
621.20
Acct. 2591.0 of of 12/31/77
4,399.40
Total Applications of Funds in 1977
$ 125,418.93
*521 Petitioners had unreported income from Lester Trucking of $ 16,281.89 for 1976 and $ 5,707.24 for 1977, as follows: 1976
1977
Sources of Funds
$ 82,503.34 $ 119,711.69 Applications of Funds
98,785.23 125,418.93 Unreported Income
($ 16,281.89)
($ 5,707.24)
ULTIMATE FINDINGS OF FACT Petitioners failed to maintain or to produce for respondent or the Court adequate records of sales or gross receipts from *522 their business. Respondent's reconstruction of taxable income by the source and applications of funds method, as supplemented at the trial, is proper. Petitioners have not established that their underpayments of tax were not due to negligence or intentional disregard of rules and regulations. OPINION Petitioners failed to maintain or at least failed to produce for respondent or the Court any records of their gross receipts from their trucking business. In the absence of such records, respondent may of course use indirect methods of proof to reconstruct the taxpayers' income. Here respondent used the source and applications of funds method to determine that petitioners had understated their gross receipts and hence their taxable income from the business. The source and applications of funds method of income reconstruction has long been accepted by this Court. . The method assumes that the amount by which the taxpayers' applications of funds during a taxable year exceeds their known sources of funds for that year is taxable income. Here respondent's source and applications of funds determinations, as modified *523 by the Court to reflect the evidence adduced at the trial, show unreported income of $ 16,281.89 for 1976 and $ 5,707.24 for 1977. Petitioners have the burden of proof to establish any errors in these determinations, and they have not sustained their burden. Respondent imposed negligence additions under section 6653(a) in this case. Petitioners also have the burden to establish that their underpayments of tax were not due to negligence or intentional disregard of rules and regulations. ; . They have not done so, and we sustain respondent's imposition of the negligence additions. To reflect the above holdings, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years here involved, unless otherwise indicated.↩
2. At trial Mrs. Finkbinder suggested that she wrote many checks and also made cash payments to cover her mother's personal living expenses, but that her mother gave her the money to cover those expenditures. If so, those transactions would be wash transactions and would not affect the source and applications of funds statement in this case. In any event, there is no evidence that any funds furnished by the mother should have been included in the sources of funds or were part of any of the expenditures included in respondent's source and applications of funds computations. The same is true of certain repayments that petitioners' sons allegedly made to petitioners in connection with loans obtained by the parents to purchase a car and a snowmobile for the boys. The loan payments were made from the business checking account. Any repayments by the sons went into Mrs. Finkbinder's personal checking account, and her personal checking account was not involved in the source and applications of funds computation in this case.↩
3. The total purchase price for the 1976 Cadillac was $ 9,076 rather than $ 8,600, which would increase the expenditures and hence any understatement of income by another $ 476. However, the trade-in for the old Cadillac was $ 3,150 rather than the $ 2,449.34 figure credited here. This $ 2,449.34 figure was discussed at the trial but was never explained. It would seem that the correct adjustment in regard to the Cadillac would be to list the purchase price as $ 9,076 (+ $ 476) and list the trade-in as minus $ 3,150 (- $ 700.66), for a net change of minus $ 224.66, which would decrease any understatement of income by that amount. Since the minus $ 2,449.34 was never explained, the Court will not change these figures, but the parties may wish to consider it in their Rule 155 computation.↩
4. Although the parties have not questioned this figure, petitioners' tax return for 1977 actually reported interest income of $ 289.96, which, if correct, would increase the source of funds and correspondingly decrease the understatement of income for 1977 by $ .90. The Court has not taken the $ .90 into account in its Findings, but the parties may wish to do so in their Rule 155 computation.↩
5. This figure of $ 20,414.07 came from petitioners' tax return computation of their investment tax credit for new property purchased in 1977. Mrs. Finkbinder challenged this figure to the extent of $ 207.95 for a typewriter purchased February 7, 1977 and $ 120.60 for a vice ginder purchased September 11, 1977. She testified that these items were purchased with credit cards and do not represent actual expenditures. However, there is no evidence in the record as to when the credit card charges were paid. These items were claimed on the depreciation schedule and on the investment tax credit computation on the 1977 return, and we have no basis on this factual record for excluding these amounts as part of the purchases of assets that year.↩